FILED
IN CLERK'S OFFICE

2004 JUN -4 P 4: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHAW'S SUPERMARKETS, INC., )
) Civil Action No.
Plaintiff, )
v. )
) 04 cv 11219 DPW
UNITED FOOD AND COMMERCIAL )
WORKERS UNION, LOCAL 791, )
AFL-CIO, )
)
Defendant. )

**SHAW'S SUPERMARKETS, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR
TEMPORARY RESTRAINING ORDER**

Plaintiff Shaw's Supermarkets, Inc. ("Shaw's") respectfully submits this memorandum in support of its application for a temporary restraining order pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). In particular, Shaw's requests this Court issue an order staying the American Arbitration Association ("AAA") Matter No. 11 300 02475 03, and enjoining Defendant Local 791, United Food and Commercial Workers Union, AFL-CIO ("Local 791"), from proceeding the arbitration until the National Labor Relations Board (the "Board") has rendered its decision on Shaw's Petition for a secret ballot election.

By its application, Shaw's seeks to maintain the status quo pending the Board' decision on its Petition.[1] Local 791 improperly seeks to gain recognition as the collective bargaining representative of the employees at Shaw's Mansfield, Massachusetts store through arbitration.

---

[1] On May 28, 2004, during a conference call with Local 791's counsel, Warren Pyle, and Arbitrator Sander, Shaw's informed Attorney Pyle that it would be filing this action and seeking a temporary restraining order staying the arbitration proceedings. On June 3, 2004, Shaw's informed Attorney Pyle that it intended to file the action and seek the TRO on June 4, 2004 or as soon thereafter as the Court can hear the request.

Whether Local 791 should be recognized involves core representation issues under the National Labor Relations Act which cannot be decided through the contract-based arbitration procedures set forth in the parties' collective bargaining agreement ("CBA"). Additionally, Shaw's filed a Petition for a Board-run election. The Petition is currently pending before the Board. The issues raised by the Petition parallel the issues Local 791 seeks to resolve through arbitration. In fact, if the Board orders an election be held, then the arbitration will be moot. For these reasons, the Court should issue a temporary restraining order staying the arbitration proceedings to maintain the status quo until the Board has rendered its decision on the Petition.

## I.   Introduction

Shaw's is a retail grocery store with locations throughout the Northeast. Local 791 is a labor organization that represents a number of Shaw's employees in Massachusetts, Rhode Island, and Maine. Shaw's and Local 791 are parties to a collective bargaining agreement. In an attempt to anticipate how the union would be allowed to solicit employees at Shaw's stores that are opened during the term of the CBA, the parties agreed to the following provision:

> 8.   New Stores:
>
> When the Employer opens new stores within the geographic area described in Article 1, the Employer will allow access within the store prior to opening during the hiring process, will remain neutral, and will recognize the Union and apply the contract when a majority of Employees have authorized the Union to represent them.

In the summer of 2003, Shaw's began hiring for a new Shaw's store in Mansfield, Massachusetts. During the hiring process for the Mansfield store, Local 791 sought to organize the store's employees. Pursuant to its obligations under the CBA's "New Stores" provision, Shaw's allowed Local 791 access and remained neutral during the hiring process.

2

Before Shaw's completed the hiring process at the Mansfield store, Local 791 declared that it had attained majority status and requested Shaw's recognize it as the collective bargaining representative for the employees at the Mansfield store and apply the existing CBA to those employees. After Shaw's reviewed Local 791's documentation, Shaw's refused to recognize Local 791 for several reasons. First, Shaw's had been informed that Local 791 violated employees' Section 7 rights while soliciting the employees. Second, the number of submitted authorizations cards did not constitute a majority of the expected employees at the store. Third, Local 791 obtained authorizations from, and sought to represent, employees who worked as supervisors, as defined by the National Labor Relations Act or who were not employees of the store. In the end, Shaw's concluded that it had a good faith belief that Local 791 failed to establish that it represented an uncoerced majority of the Mansfield store's employees. Accordingly, Shaw's refused to voluntarily recognize Local 791.

On August 22, 2003, Shaw's opened the Mansfield store as a non-union store. Instead of filing an unfair labor practice charge to challenge Shaw's good faith refusal to recognize under the National Labor Relations Act, Local 791 submitted two grievances regarding the Mansfield store. The grievances contained two primary allegations: (A) Shaw's violated the CBA by refusing to recognize Local 791 as the collective bargaining representative for employees at the Mansfield Store and (B) Shaw's violated the CBA by failing to allow Local 791 access and by failing to remain neutral.

On October 23, 2003, Local 791 submitted a notice of its intent to submit the grievances to arbitration under the CBA's grievance procedures. Over Shaw's objections, an arbitrator, Professor Frank Sander, was named and the arbitration is scheduled to commence on June 11,

3

2004. Local 791 requests that the arbitrator find that it represents a majority of the employees and order Shaw's to recognize Local 791 and apply the existing CBA to those employees.

The parties' CBA contains the following procedures for the arbitration of disputes between the parties:

### ARBITRATION PROCEDURES

Section 1.  Arbitration is the fourth and final step of the grievance procedures. If a grievance is not settled at Step 3, the Union may submit the grievance to arbitration by written notice to the American Arbitration Association and the Company's Labor Relations Department within thirty (30) calendar days of received of the Step 3 answer.

Section 2. A request for a panel of arbitrators will be sent to the American Arbitration Association. The parties will select an arbitrator from the American Arbitration Association panel by alternatively striking a name from the list until only one (1) name remains. The parties will then notify the American Arbitration Association of the selected arbitrator. If the final remaining arbitrator is unacceptable to either party, one (1) additional panel may be jointly requested, from which an arbitrator must be selected.

Section 3. <u>The authority of the arbitrator is expressly limited to deciding if a violation of the Agreement has occurred.</u> The arbitrator shall have no authority to add to, detract from, or in any way change or alter any of the terms and conditions of this Agreement. The arbitrator shall give due consideration to the rights of management and shall make no ruling that unduly abridges or restricts management rights or improperly substitutes the arbitrator's judgment for management's.

Section 4. The arbitrator's decision will be final and binding on all parties provided the decision is made within the authority delegated to the arbitrator by the parties. The Union and the Company shall each bear one-half (1/2) of the fee and expenses of the arbitrator. All other expenses will be borne by the party incurring them. The Company will not be responsible for the wages of any Employees for time lost from work due to preparing for or participating in arbitration proceedings.

Section 5. The parties agree that neither will use the services of legal counsel during arbitration proceedings without first having given advance notice to the other of such intent. The parties further agree not to withhold relevant information from the other during the preliminary grievance steps in a good faith effort to resolve disagreements without arbitration.

(Emphasis added.)

Since Local 791 continued to claim it represented a majority of the employees at the Mansfield store and continued to demand recognition after the hiring process was complete, on April 21, 2004, Shaw's filed a Petition with the Regional Director of Region 1 of the National Labor Relations Board requesting that the Board hold an secret ballot election pursuant to Section 9 of the National Labor Relations Act, 29 U.S.C. § 159 (the "Petition"). The Regional Director administratively dismissed the Petition. On May 13, 2004, Shaw's filed a timely Request for Review of the Regional Directors' decision with the National Labor Relations Board. As allowed under the Board's rules, Local 791 filed its Opposition to the Request for Review. The matter is currently fully briefed and it is pending with the Board.

## II. Current Dispute

The issue in dispute is clear. Local 791 claims that Shaw's must recognize it as the collective bargaining representative for the employees at the Mansfield store. For its part, Shaw's refuses to recognize Local 791. Local 791 takes the position that the recognition issue should be resolved through arbitration. Whereas, Shaw's maintains that the CBA's grievance procedures do not apply to core representation issues and that the matter must be resolved through the Board's procedures – either through a Board-run election or through an unfair labor practice charge based on Shaw's refusal to bargain with Local 791.

## III. Argument

### 1) <u>This Court Has Jurisdiction To Issue A Stay</u>

Under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), this Court has jurisdiction to issue a temporary restraining order staying the AAA arbitration proceedings pending the decision of the NLRB on the Petition. <u>See e.g.</u> <u>Hawaii Nurses'</u>

5

Association Collective Bargaining Organization v. Kapiolani Heath Care System, 890 F.Supp. 925 (D. Hawaii 1995). In Hawaii Nurses', the union sought to force an employer to recognize the union and apply the existing collective bargaining agreement at a second facility through arbitration. In response, the employer filed an unfair labor practice charge with the Board on the accretion issue. The employer asked the court to stay the arbitration proceedings until the NLRB resolved the unfair labor practice charges. The Court agreed to stay the arbitration proceeding:

> The court finds that a stay of all proceedings is appropriate. As noted above, the court enjoys discretion to stay this matter. Deferral to the NLRB is appropriate until the Board can rule. Nelson v. IBEW, Local 46, 899 F.2d 1557, 1563-63 (9th Cir. 1990). The NLRB's decision will, of course, bind this court. United States v. General Dynamics, 828 F.2d 1356, 1260 (9th Cir. 1987).
>
> Additionally, such a stay will serve judicial economy. The accretion issue is already before the NLRB, and any decision by the NLRB on this issue will necessarily determine any other unfair labor practice relating to the scope of the bargaining unit. A decision by the NLRB will determine whether or not arbitration is even necessary or mandated. By staying these proceedings, the court would be conserving both the parties and the court's time and effort.
>
> In contrast, granting relief as requested by the Union and compelling arbitration of this matter would run counter to judicial economy, as it would lead to a parallel proceeding, requiring duplicative efforts of counsel.
>
> Accordingly, while the court agrees that it has the authority to compel arbitration in this matter, the court declines to do so, and orders a stay of the proceedings until such time as the NLRB has issued its ruling.

Id. (footnote omitted).

### 2) **Proceeding With The Arbitration Will Result In Immediate and Irreparable Injury to Shaw's And Its Employees**

The AAA arbitration regarding Local 791's majority status at Shaw's Mansfield store is scheduled to start on June 11, 2004. If allowed to proceed, the arbitration will result in immediate and irreparable injury to Shaw's and its employees.

First, under Section 9 of the National Labor Relations Act, an employer has the right, on behalf of its employees, to demand a Board-run, secret ballot election in response to a union's demand for recognition. 29 U.S.C. § 159. Shaw's Petition invoked this right. By seeking to arbitrate the representation issue, Local 791 seeks to bar Shaw's from petitioning the Board and bar employees from deciding whether they want Local 791 to represent them through a Board-run, secret ballot election. Under the parties' CBA, if Local 791 were recognized as the collective bargaining representative of Shaw's employees at the Mansfield store, they would automatically – possibly without even seeing the document – be subject to the existing CBA.[2]

Shaw's recognizes that an employer may, in certain circumstances, waive its rights under Section 9 in a collective bargaining agreement. See e.g. Houston Div. of The Kroger Co., 219 NLRB 388 (1975). In fact, Local 791's attempt to arbitrate the issue of its representational capacity is premised on its claim that the "New Stores" clause in the parties' CBA constitutes a waiver of Shaw's Section 9 rights. However, the waiver issue has not yet been resolved. The central issue presented by Shaw's Petition to the Board is whether the parties' "New Stores" clause constitutes a waiver of Shaw's Section 9 rights. If the Board finds that Shaw's has <u>not</u> waived its right to demand an election under Section 9, then Local 791's majority status must be decided through a Board-run election and the arbitration proceedings will be moot.

Even if the Board decides that Shaw's has waived its rights under Section 9, Local 791 is not entitled to seek recognition through arbitration. This issue was addressed in the Board's and Court's decisions in Snow & Sons, 134 NLRB 709 (1961), enf'd, 308 F.2d 687 (9th Cir. 1962). In the Board's Snow decision, the Board applied its general principles regarding waiver to the

---

[2] This is a particular problem because a significant majority of the employees working at the Mansfield store are part-time employees. The parties' existing CBA treats part-time and full-time employees differently as to wages, hours, and benefits. Under the CBA, part-time employees have lower wages and less benefits.

facts of that case and found that the employer improperly refused to recognize the union because it had waived its Section 9 rights. On appeal, the Ninth Circuit upheld the Board' waiver analysis. The court also addressed the employer's argument, much like the arguments offered by Shaw's in this case, that it refused to recognize the union on the grounds that it had a good faith belief that the union had not established its majority status. Although the Board rejected the employer's evidence of good faith, the Ninth Circuit discussed the proper analysis of whether an employer's "good faith belief" can justify its refusal to recognize the union and the remedies available to the union in that case:

> ***If [the employers] in good faith doubted that the union represented a majority of their employees on that date, they were warranted in refusing to recognize the union until the claim was established by a Board election, even though the union in fact had majority status.*** If, on the other hand, [the employers] did not have a genuine doubt at that time concerning the union's majority status, but had some other reason for requiring a Board election as a prerequisite to collective bargaining, insistence upon a Board election was unwarranted and the refusal to bargain without first having an election was an unfair labor practice. See NLRB v. Trimfit of California, Inc., 211 F.2d 206, 209 (9th Cir. 1954).
>
> The issue under discussion thus turns upon a question of fact: Were the [employers] motivated by a good faith doubt as to the union's status in demanding a Board election before they would negotiate with the union? The findings of the Board with respect to this question of fact, if supported by substantial evidence on the record considered as a whole, are conclusive. Section 10(e) of the Act, 29 USC § 160(e).

308 F.2d at 691 (emphasis added); see also NLRB v. Comfort, Inc., 365 F.2d 867, 877 (8th Cir. 1966)("The law is well settled that if Respondent in good faith doubted that the Union represented a majority of its employees, it could justifiably refuse to recognize and bargain with the Union, until the latter's claim was established through the procedure of a Board election."). Based on the Snow decision, if Local 791 disagreed with Shaw's assessment that it did not establish its majority status, Local 791 had to challenge that assessment through the Board's

procedures, not through arbitration. Since Local 791 chose not to file a timely unfair labor practice charge, Local 791 has waived its right to do so. In short, if Shaw's is forced to proceed with arbitration on the representation issue, Shaw's and its employees will be stripped of their rights under the National Labor Relations Act.

Second, under Board case law, proceeding with the arbitration may estop Shaw's from pursuing a Board-run election. In Verizon Information Systems, 335 NLRB 558 (2001), a union demanded recognition at a new facility and sought to obtain recognition through the arbitration procedures set forth in the parties' collective bargaining agreement. After starting to participate in the arbitration procedures, the union decided it wanted a Board-run election and filed a petition with the Board. The Board found that the union's actions estopped it from seeking a Board-run election:

> Under these circumstances, we find that the Agreement bars the instant petition. Our finding is expressly premised on the fact that the Petitioner invoked the provisions of the Agreement in seeking to organize the Employer's employees. Had the Petitioner instead chosen to file a representation petition with the Board initially, and never invoked the Agreement, we would not find that the Agreement bars the petition. Nor are we finding that the Petitioner would be barred from filing a petition if it could establish that the Agreement was no longer binding. Another determinative fact is that the Petitioner itself filed the petition in this case; we are not finding that the Agreement bars an election petition filed by another union or an unfair labor practice charge filed by an employee. We find only that, the Petitioner having invoked the Agreement, the fundamental policies of the Act can best be effectuated by holding the Petitioner to its bargain. As the Board stated in Lexington House, "[t]o do otherwise would permit the Petitioner to take advantage of the benefits accruing from its valid contract while avoiding its commitment by petitioning to the Board for an election." [Lexington House, 328 NLRB 894, 897 (1999)].
>
> ...
>
> [T]he issue is whether the Petitioner--having elected to proceed under the Agreement and derived benefits from it--should be permitted to pick and choose which provisions it wishes to invoke and which it prefers to avoid. The question, then, is really one of estoppel.

Verizon, 335 NLRB at 560-61 (footnotes omitted). If Shaw's proceeds, albeit against its will, with the arbitration of Local 791's majority status, Shaw's will certainly seek to ensure that the arbitration is conducted in compliance with the parties' agreement. Arguably, Shaw's will be invoking the arbitration procedures. It is impossible to predict whether the Board will find Shaw's unwilling participation in this case is analytically different from the union's actions in the Verizon case. If not, once the arbitration proceeds, the Board would very well dismiss Shaw's Petition on estoppel grounds. Even if there is only a small chance that the Board will take this approach, the potential harm resulting to Shaw's is irreparable. Of equal importance is that the employees working at the Mansfield store would be irreparably harmed because they would not have the opportunity to vote in a Board-run, secret ballot election.

Third, if Shaw's is forced to proceed with arbitration regarding Local 791's majority status, it will be required to expend significant resources in two separate forums that are addressing the same ultimate issue – i.e. whether Shaw's must recognize Local 791 as the collective bargaining representative of the employees at Shaw's Mansfield store. Theoretically, the arbitral forum is supposed to provide a less expensive alternative to traditional litigation. However, the instant case is the exception to that rule. Local 791's demand for recognition raises a multitude of issues. For example, Local 791 claims that it obtained union authorization cards from a majority of the employees at the Mansfield store. However, because Shaw's received credible allegations of union misconduct when Local 791 was obtaining those cards, the validity of the cards will be challenged. Since there are well over one hundred employees working at the Mansfield store, it is highly likely that fifty or more of the employees will be required to testify at the arbitration about the union's actions when obtaining the cards. Other issues that would have to be addressed at the arbitration include: (1) whether a portion of the

employees the union seeks to represent are statutory supervisors under the National Labor Relations Act; (2) what is the appropriate bargaining unit; (3) whether Local 791 properly notified employees of their right not to join the union; and (4) whether the forms used by Local 791 comply with the basic requirements of the National Labor Relations Act to constitute union authorization forms; (5) the proper timing for the determination of majority status and the timing of recognition, if at all; and (6) whether Shaw's conduct during the hiring process constituted unlawful employer assistance under Section 8(a)(2) of the National Labor Relations Act. Many, if not all, of these same questions would be addressed as part of the Board's election procedures. Without question, given the number of issues and potential witnesses that will testify, requiring Shaw's and the union to litigate in two forums simultaneously will result in a substantial, and potentially needless, expense to both parties. Indeed, since both proceedings will address the same ultimate issue, Shaw's also may face two conflicting outcomes.

As can be seen from the issues identified above, if the arbitration proceeds, the arbitration will be required to interpret and apply the policies and rules of the National Labor Relations Act. Issues such as the appropriate unit and union misconduct during organizing campaigns are core-representation issues under the National Labor Relations Act. These are issues that should, at least in the first instance, be decided by the Board. In a similar situation, the court in Hawaii Nurses', supra, found that, while it is a discretionary decision, the Board has primary jurisdiction over the interpretation and application of the National Labor Relations Act stating:

> The court has discretion to stay enforcement of an arbitration award issued under a collective bargaining agreement pending the NLRB's decision on unfair labor practice claims. Nelson v. IBEW, Local No. 46, 899 F.2d 1557 (9th Cir. 1990). The NLRB has primary jurisdiction to construe the National Labor Relations Act and to "determine what is or is not an unfair labor practice." Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982); Central

Valley Typographical Union, No. 46 v. McClatchy Newspapers, 762 F.2d 741 (9th Cir. 1985). The NLRB and the district court share "concurrent jurisdiction over cases legitimately involving both unfair labor practice charges and breach of collective bargaining agreement claims." Central Valley, 762 F.2d at 746. The district court has primary jurisdiction over labor disputes involving primarily a question of contract interpretation. Nelson, 899 F.2d at 1563.

Where there is a contractual interpretation issue which is closely related to an unfair labor practice charge already presented to the NLRB, the district court must exercise its discretion to determine whether the proceedings should be stayed until a final disposition of the NLRB proceeding. Central Valley, 762 F.2d at 746.

Here, the argument is even stronger because the issue pending before the Board is whether the employees at Shaw's Mansfield store are entitled to vote in a Board-run secret ballot election. If the Board agrees with Shaw's, the arbitration will be moot. Shaw's should not be forced to proceed with an arbitration until the Board has issued a decision on the Petition.

### 3) Local 791 Will Not Be Harmed By The Stay

The issues arising out of Shaw's Petition have been fully briefed to the Board. The parties are merely waiting for a decision by the Board. Although more dates eventually would have to be scheduled, there are only two arbitration dates presently scheduled: June 11, 2004 and August 31, 2004. The issue before the Board is one of recognition. As such, it will be given accelerated resolution. Since the Petition issues are fully brief, Shaw's expects that the Board will render its decision well before August 31, 2004. But as Local 791 filed its brief with the Board on May 28, 2004, it is unlikely that the Board will reach a decision prior to June 11, 2004.

Even if the Board decides that Shaw's has waived its Section 9 rights and that Local 791 is entitled to proceed with the arbitration, the issuance of a stay only will have maintained the status quo for a short time and briefly delayed the arbitration. Since Shaw's expects a decision from the Board prior to the next arbitration date on August 31, 2004, if the Board finds that Local 791 is entitled to proceed with the arbitration, the arbitration could proceed on August 31,

12

2004. The delay resulting from this Court's injunction would consist of one day of arbitration. That brief delay will not result in any harm to Local 791. To the extent Local 791 claims that it is harmed because it will not be able to collect union dues from employees during that time, it should be noted that it has been almost a year since Local 791 originally demanded recognition and Local 791 has indicated that it will, if successful, seek monetary damages caused by that delay in recognition. Local 791 certainly could seek to recover the loss of dues revenues, if any, resulting from the short delay caused by the issuance of a TRO in the same manner.

### IV.     Conclusion

For the foregoing reasons, Shaw's Supermarkets, Inc. respectfully requests that this Court issue an order staying the American Arbitration Association ("AAA") Matter No. 11 300 02475 03, and enjoining Defendant Local 791, United Food and Commercial Workers Union, AFL-CIO ("Local 791"), from proceeding the arbitration until the National Labor Relations Board has rendered its decision on Shaw's Petition for a secret ballot election.

                                                                Shaw's Supermarkets, Inc.
                                                                By Its Attorneys,

DATED:  June 3, 2004.
        Portland, Maine
                                                                _____
                                                                Philip J. Moss, Esq.
                                                                David A. Strock, Esq.
                                                                Moon, Moss, McGill & Shapiro, P.A.
                                                                Ten Free Street, P.O. Box 7250
                                                                Portland, Maine  04112-7250
                                                                Telephone (207) 775-6001