UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAW'S SUPERMARKETS, INC. )<br>)<br>      Plaintiff )<br>)<br>v. )<br>)<br>UNITED FOOD AND COMMERCIAL )<br>WORKERS UNION, LOCAL 791, )<br>AFL-CIO )<br>)<br>      Defendant ) | Civil Action No.<br><br>04cv11219 DPW |

### AFFIDAVIT OF ERIC NADWORNY

Eric Nadworny, being duly sworn deposes and states as follows:

1.  I am the Vice President for Associate & Labor Relations at Shaw's Supermarkets, and have been at all times relevant to circumstances involved in this case.

2.  Shaw's and Local 791 are parties to a collective bargaining agreement in effect since July 28, 2001 and will expire on July 31, 2004 (the "CBA").

3.  The CBA treats full time and part time employees differently as to their wages, hours and benefits. Under the CBA part time employees have lower wages and fewer benefits than full time employees.

4.  As part of the CBA, the parties sought to provide how Local 791 would have access to the employees hired at new Shaw's stores for purposes of soliciting new employees for union membership and to represent them. The CBA contains the following language on this issue:

8. New Stores:

When the Employer opens new stores within the geographic area described in Article 1, the Employer will allow access within the store prior to opening during the hiring process, will remain neutral, and will recognize the Union and apply the contract when a majority of Employees have authorized the Union to represent them.

5. In the summer of 2003, Shaw's prepared to open a new Shaw's store in Mansfield, Massachusetts.

6. During the hiring process for the Mansfield store, Local 791 sought to organize the store's employees. Pursuant to its obligations under the CBA's "New Stores" provision, Shaw's allowed Local 791 access and remained neutral during the hiring process.

7. Before Shaw's completed the hiring process at the Mansfield store, Local 791 declared that it had attained majority status and requested Shaw's voluntarily recognize it as the collective bargaining representative for the employees at the Mansfield store and apply the existing CBA to those employees.

8. After Shaw's reviewed Local 791's documentation, Shaw's refused to recognize Local 791 for several reasons. First, Shaw's had been informed that Local 791 violated employees' Section 7 rights while soliciting the employees. Second, the number of submitted authorizations cards did not constitute a majority of the expected employees at the store. Third, Local 791 obtained authorizations from, and sought to represent, employees who worked as supervisors, as defined by the National Labor Relations Act or who were not employees of the store. In the end, Shaw's concluded that it had a good faith belief that Local 791 failed to establish that it represented an uncoerced majority of the Mansfield store's employees. Accordingly, Shaw's refused to voluntarily recognize Local 791.

9. On August 22, 2003, Shaw's opened the Mansfield store as a non-union store.

10. Instead of filing an unfair labor practice charge to challenge Shaw's good faith refusal to recognize under the National Labor Relations Act, Local 791 submitted two grievances regarding the Mansfield store. The grievances contained two primary allegations: (A) Shaw's violated the CBA by refusing to recognize Local 791 as the collective bargaining representative for employees at the Mansfield Store and (B) Shaw's violated the CBA by failing to allow Local 791 access and by failing to remain neutral.

11. On October 23, 2003, Local 791 submitted a notice of its intent to submit the grievances to arbitration under the CBA's grievance procedures. Over Shaw's objections, an arbitrator, Professor Frank Sander, was named and the arbitration is scheduled to commence on June 11, 2004. Local 791 requests that the arbitrator find that it represents a majority of the employees and order Shaw's to recognize Local 791 and apply the existing CBA to those employees.

12. The parties' CBA contains the following procedures for the arbitration of disputes between the parties:

**ARBITRATION PROCEDURES**

Section 1. Arbitration is the fourth and final step of the grievance procedures. If a grievance is not settled at Step 3, the Union may submit the grievance to arbitration by written notice to the American Arbitration Association and the Company's Labor Relations Department within thirty (30) calendar days of received of the Step 3 answer.

Section 2. A request for a panel of arbitrators will be sent to the American Arbitration Association. The parties will select an arbitrator from the American Arbitration Association panel by alternatively striking a name from the list until only one (1) name remains. The parties will then notify the American Arbitration Association of the selected arbitrator. If the final remaining arbitrator is unacceptable to either party, one (1) additional panel may be jointly requested, from which an arbitrator must be selected.

Section 3. <u>The authority of the arbitrator is expressly limited to deciding if a violation of the Agreement has occurred.</u> The arbitrator shall have no

authority to add to, detract from, or in any way change or alter any of the terms and conditions of this Agreement. The arbitrator shall give due consideration to the rights of management and shall make no ruling that unduly abridges or restricts management rights or improperly substitutes the arbitrator's judgment for management's.

Section 4. The arbitrator's decision will be final and binding on all parties provided the decision is made within the authority delegated to the arbitrator by the parties. The Union and the Company shall each bear one-half (1/2) of the fee and expenses of the arbitrator. All other expenses will be borne by the party incurring them. The Company will not be responsible for the wages of any Employees for time lost from work due to preparing for or participating in arbitration proceedings.

Section 5. The parties agree that neither will use the services of legal counsel during arbitration proceedings without first having given advance notice to the other of such intent. The parties further agree not to withhold relevant information from the other during the preliminary grievance steps in a good faith effort to resolve disagreements without arbitration.

(Emphasis added.)

13. Since Local 791 continued to claim it represented a majority of the employees at the Mansfield store and continued to demand recognition after the hiring process was complete, on April 21, 2004, Shaw's filed a Petition with the Regional Director of Region 1 of the National Labor Relations Board ("NLRB") requesting that the NLRB hold an secret ballot election pursuant to Section 9(a) of the National Labor Relations Act, 29 U.S.C. 159(a) (the "Petition").

14. Under Section 9(a), an employer has the right to request a Board-run election when a union requests recognition.

15. On May 13, 2004, Shaw's filed a timely Request for Review of the Regional Directors' decision with the National Labor Relations Board. As allowed under the NLRB's rules, Local 791 filed its Opposition to the Request for Review. The matter is currently fully briefed and it is pending with the Board.

16. If the Board determines the New Stores provision is **not** a waiver of Shaw's Section 9(a) rights, the matter will proceed to a Board-run election and the arbitration of the representation issues would be moot.

17. Shaw's remains willing and prepared to permit the National Labor Relations Board to conduct a secret ballot election pursuant to its proceedings. To date, the Union has been unwilling to proceed with such secret ballot election.

STATE OF MASSACHUSETTS
_____ County

_____
Eric Nadworny

Personally appeared before me the above-named Eric Nadworny, being first duly sworn, who made oath that the above statements were made to his own knowledge and information.

Subscribed and sworn to before me,

Dated: June 3, 2004

_____
Notary Public:
My Commission Expires:

COMMONWEALTH OF MASSACHUSETTS
__Plymouth__ County

On this _3rd_ day of _June_, 20_04_, before me, the undersigned notary public, personally appeared __Eric Nadworny__ (name of document signer), proved to me through satisfactory evidence of identification, which were_____, to be the person whose name is signed on the preceding or attached document, and who sworn or affirmed to me that the contents of the document are truthful and accurate to the best of (his) (her) knowledge and belief.

_Patricia E. Blanchard_
Notary Public

My commission expires: