United States District Court
District of Massachusetts

FILED
IN CLERKS OFFICE

2004 JUN -7 P 4:10

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| SHAW'S SUPERMARKETS, INC., )<br> Plaintiff, )<br>v. )<br> )<br>UNITED FOOD AND COMMERCIAL )<br>WORKERS UNION, LOCAL 791, )<br>AFL-CIO, )<br> Defendant. ) | 04-CV-11219 DPW |

**MEMORANDUM FOR LOCAL 791, UNITED FOOD AND
COMMERCIAL WORKERS UNION IN OPPOSITION TO
SHAW'S SUPERMARKETS, INC.'S MOTION FOR A
TEMPORARY RESTRAINING ORDER**

## I.    INTRODUCTION

This is an action by Shaw's Supermarkets, Inc. ("Shaw's" or "the Company")

seeking to enjoin arbitration proceedings before an arbitrator designated by the American

Arbitration Association to hear and decide grievances by Local 791, United Food and

Commercial Workers Union ("Local 791" or "the Union"). The grievances claim that

Shaw's has violated a provision in the current collective bargaining agreement (CBA) in

which Shaw's has agreed to recognize Local 791 and to apply the CBA to a new store

"when a majority of employees have authorized the Union to represent them." The

arbitration hearings, before Professor Frank E.A. Sander, began on May 12, 2004, and

were scheduled to continue on June 2, June 11, and August 31. However, on May 28,

Shaw's requested that the arbitrator cancel the June 2 hearing so that it could seek

injunctive relief and, over strenuous objection by Local 791, the arbitrator agreed to do

so. However, the arbitrator ruled that unless an injunction issues, the hearings will

continue as scheduled on June 11.

We show herein that many of the factual assertions in Shaw's unverified complaint are incorrect or incomplete. Moreover, under decisions of the Court of Appeals for the First Circuit and all other circuits that have addressed the issue, a federal court lacks jurisdiction to enjoin an arbitration proceeding under the Norris-LaGuardia Act, 29 U.S.C. §§ 101, 107. These courts have also ruled that there is no irreparable injury in participating in an arbitration proceeding because an arbitrator's order is not self-executing and is subject to review. Finally, Shaw's has not demonstrated a likelihood of success on the merits of the issue of the arbitrability of the Union's grievances.

## II.    RELEVANT FACTS[1]

Shaw's and Local 791 are parties to a collective bargaining agreement covering the period July 28, 2001, through July 31, 2004. The agreement is in effect in thirty-nine Shaw's stores in Southeastern Massachusetts and Rhode Island where almost six thousand employees work. Since 1988 the agreements have included a "future stores" provision that states:

> When the Employer opens new stores within the geographic area described in Article 1, the Employer will allow access within the store prior to opening during the hiring process, will remain neutral, and will recognize the Union and apply the contract when a majority of Employees have authorized the Union to represent them.

The geographic area described in Article 1 of the CBA includes the State of Rhode Island and Norfolk, Bristol, Plymouth and Barnstable counties in Massachusetts.

Under the new stores provision, approximately sixteen new Shaw's stores have come under the terms of the CBAs since 1989. In each case the Union obtained a majority of authorization cards from a majority of employees before the store opened and

---

[1] The facts set forth in this statement are verified by the affidavit of Russell Regan, President of Local 791, attached hereto as Exhibit A.

so advised Shaw's, whereupon Shaw's recognized the Union for the new store and

applied the provisions of the CBA to the employees in that store. There was one

exception when Shaw's refused to recognize Local 791 until the date of the store

opening, but an arbitrator ruled that Shaw's violated the new stores provision by refusing

to recognize the Union when it attained majority status before the store opening.

In August 2003, Shaw's opened a new store in Mansfield, Massachusetts, within

the geographic area covered by the agreement and the new stores provision. Local 791

obtained a majority of authorizations from employees transferred from other union stores

and new employees hired to work at Mansfield. On August 13, 2003, Local 791 advised

Shaw's that it had obtained authorizations for representation from a majority of

employees hired for the new store and demanded recognition. Shaw's responded on

August 14:

> As per our existing practice, please submit proof of your assertion that the Union
> has majority status as of this date. As we have done in the past, upon review and
> verification of proof of majority status, Shaw's will recognize Local 791 and
> apply the collective bargaining agreement to the Mansfield store.

(Exhibit B.) On August 19, three days before the store opening, the Union delivered

authorizations for representation from a majority of employees hired and transferred to

work in the Mansfield store. But on August 21, Shaw's refused recognition and

announced that the store would be non-union. It told the employees transferred from

union stores that they would have to leave the union or return to their former stores.

Shaw's claimed that the Union had obtained authorization cards from employees

by coercion or misrepresentation and filed a charge with the National Labor Relations

Board ("NLRB" or "the Board"). The Regional Director investigated the charge and

3

refused to issue a complaint for lack of evidence, and the Board's General Counsel affirmed that decision. (Exhibit C.)

Local 791 promptly filed grievances and submitted them to arbitration under the CBA's broad grievance and arbitration provision that authorized the arbitrator to hear and decide claims of violation of the CBA. Pursuant to the CBA, an arbitrator was appointed by the American Arbitration Association. The arbitrator, Professor Frank E.A. Sander of Harvard Law School, after receiving submissions of the parties, ordered that hearings be expedited. (Exhibit D). Hearings began on May 12, 2004. At that hearing the Union made an opening statement and offered supporting documents.[2]

On April 21, eight months after Shaw's refused to recognize Local 791 for the Mansfield store, and twelve days before hearings before the arbitrator were to begin (a May 3 hearing was canceled because of a Shaw's management meeting) Shaw's filed a petition with the National Labor Relations Board, seeking an election to resolve the Union's claim that it was entitled to recognition. On April 30, the Regional Director dismissed the petition administratively under the authority of Central Parking Systems, Inc, 335 NLRB 390 (2001), wherein the NLRB dismissed an employer's petition for an election in a case where the CBA contained provision for recognition in an after acquired facility. (Exhibit E.) Shaw's has requested review by the NLRB.

The arbitrator, after receiving submissions of the parties, refused to defer hearings pending a decision by the NLRB. (Exhibit F.)

---

[2] Shaw's complaint, paragraph 17, is incorrect in stating that "the arbitration is scheduled to commence on June 11, 2004." A transcript of the May 12, 2004, hearing contains 92 pages.

## III.     ARGUMENT

    A.    <u>This Court has no jurisdiction to issue a stay of the underlying arbitration because it is specifically prohibited from doing so under the Norris-LaGuardia Act and because there is no other precedent supporting the Court's jurisdiction to do so.</u>

        1.    Every Circuit Court to have addressed the issue has held that the Norris-LaGuardia Act prohibits a District Court from restraining or enjoining a labor arbitration.

The Norris-LaGuardia Act ("the NLA") states that no court may issue any temporary or permanent injunction in a case "involving or growing out of a labor dispute" except under certain very limited circumstances. 29 U.S.C. §§ 101, 107. Section 7 of the NLA sets forth the circumstances required for an injunction, which include, <u>inter alia</u>, the commission of or imminent threat of unlawful acts and the threat of "substantial and irreparable injury to complainant's property." 29 U.S.C. § 107. Section 7 also states that no temporary or permanent injunction may issue without the court first holding a hearing on the matter. <u>Id.</u>

Every federal appeals court to have addressed the issue, including the First Circuit, has held that these provisions of the NLA specifically forbid a District Court from enjoining the arbitration of a labor dispute, or at least that injunctions are impermissible except in the unlikely event that the statutory factors of section 7 are met. <u>Tejidos de Coamo, Inc. v. International Ladies' Garment Workers' Union</u>, 22 F.3d 8 (1st Cir. 1994) (<u>Tejidos</u>); <u>Lukens Steel Co. v. United Steelworkers</u>, 989 F.2d 668 (3d Cir. 1993); <u>AT&T Broadband, LLC v. International Brotherhood of Electrical Workers</u>, 317 F.3d 758 (7th Cir. 2003) (<u>AT&T Broadband</u>); <u>Camping Construction Co. v. Iron Workers</u>, 915 F.2d 1333 (9th Cir. 1990); <u>In re Marine Engineers Beneficial Assn.</u>, 723 F.2d 70 (D.C. Cir. 1983).

In its filing, Shaw's has failed to acknowledge the requirements of the NLA, but it would be unable to meet those requirements in any regard. The Company has not alleged the commission or threat of an unlawful act that requires injunctive relief, nor has it alleged the threat of substantial and irreparable harm to its property or "property-like interest." See Tejidos, 22 F.3d at 13.

With regard to the issue of irreparable harm, the courts to have addressed the issue in this context regularly find that there would be no irreparable harm that would allow a District Court to enjoin an arbitration. See, e.g., id. at 14-15; AT&T Broadband, 317 F.3d at 762. The Company's stated concerns over what an arbitrator might order are irrelevant, because an arbitrator's order is not self-executing and is subject to review. Tejidos, 22 F.3d at 14; AT&T Broadband, 317 F.3d at 762. Moreover, the Company's argument that the NLRB's holding in Verizon Information Systems, 335 NLRB 558 (2001) (Verizon), might prevent Shaw's from proceeding with its petition before the Board is specious. In that case, the NLRB prevented a party from electing to proceed in two separate forums on the same issue. Id. Though Shaw's may seek to ensure that any arbitration proceeding is conducted correctly, it is the Union, and not Shaw's, who chose the arbitration forum, so under this holding, it is only Local 791 that could possibly be barred from proceeding on the same matter elsewhere.

The only form of loss the Company alleges that can truly be attributed to participating in the arbitration proceeding is the time and expense of the litigation. (Plaintiff's memorandum at 11.) However, it has long been established that "the expense of adjudication is not irreparable injury" for the purposes of evaluating injunctive relief.

AT&T Broadband, 317 F.3d at 762 (citing FTC v. Standard Oil, 449 U.S. 232, 244 (1980) among other Supreme Court cases).

For these reasons, pursuant to the terms of the Norris-LaGuardia Act, the Court is without the authority to issue a temporary or permanent injunction preventing the arbitration from proceeding.

> 2.    The Company's reliance on Hawaii Nurses' Assoc. Collective Bargaining Org. v. Kapiolani Health Care System, 890 F. Supp. 925 (1995), is misplaced, because the District Court in that case did not enjoin an arbitration proceeding as Shaw's contends, but rather stayed its own proceedings.

The case of Hawaii Nurses' Assoc. Collective Bargaining Org. v. Kapiolani Health Care System, 890 F. Supp. 925 (1995) (Hawaii Nurses' Assoc.), arose when a union filed a motion to compel arbitration of grievances to determine whether certain collective bargaining agreements (CBAs) covered nurses at one of the employer's facilities. The employer had refused to arbitrate and filed two clarification petitions with the NLRB requesting that the Board find the nurses had not accreted into the bargaining unit. In response to the union's motion to compel arbitration and motion for summary judgment, the employer filed a motion for a stay of the District Court's proceedings until the NLRB ruled on the clarification petitions. The Hawaii District Court denied the union's motion for summary judgment and granted the employer's motion for a stay of the proceedings before the Court.

The Hawaii District Court's decision is perfectly distinguishable from the present case. The proceeding in Hawaii Nurses' Assoc. arose from the union's motion to compel arbitration, which the Court had proper discretion to hear under section 301 of the Labor Management Relations Act. See Carey v. Westinghouse Electric Corp., 375 U.S. 261

(1964). The Court was free to act within its discretion to deny the union's request for summary judgment on its motion to compel, and it did so while at the same time granting the employer's cross-motion to stay the proceedings. The crucial point missed by Shaw's in its discussion of Hawaii Nurses' Assoc. is that the District Court stayed its own proceedings, not the arbitration proceeding. See 890 F. Supp. at 928, 931 (noting that the Respondent asked the Court to "stay the proceedings in this case" and later granting "the Respondent's motion to stay all proceedings in this case") (emphasis added). Said another way, the District Court properly exercised its discretion to stay the court proceedings in which the union sought to compel arbitration but did not issue any order enjoining or staying the arbitration proceeding itself. This is a crucial distinction, especially considering the holdings in this and other circuits (including the Ninth Circuit) that the Norris-LaGuardia Act prohibits District Courts from issuing injunctions to prevent arbitrations from proceeding. See supra Part III.A.1.

This reading of the decision in Hawaii Nurses' Assoc. is underscored by a review of the precedents that Hawaii District Court relied on in rendering its decision. The Court drew support for its decision in pertinent part from Central Valley Typographical Union, No. 46 v. McClatchy Newspapers, 762 F.2d 741 (9th Cir. 1985) (Central Valley), abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193 (2000). [3] In that case, the Ninth Circuit authorized the District Court to stay its own proceedings, not those of an arbitrator. Id.

---

[3] Though the Hawaii District Court also drew support for its action from Nelson v. IBEW, Local Union No. 46, AFL-CIO, 899 F.2d 1557 (9th Cir. 1990), the Court erred in that regard. Nelson was an injunction action brought by a Regional Director of the NLRB under section 10($\ell$) of the National Labor Relations Act, which specifically gives

For these reasons, the decision in <u>Hawaii Nurses' Assoc</u> offers no support for the Company's position that this Court has the authority to stay the arbitration proceedings. Therefore, the Court must deny the Company's motion.

B.    <u>The Plaintiff would not be entitled to a temporary restraining order even under the traditional standards for evaluating injunctive relief.</u>

The First Circuit utilizes a four-part test to determine whether a movant is entitled to preliminary injunctive relief. <u>See</u> <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 15 (1st Cir.1996) (describing the four-part test). This test requires the movant to show that (1) it is likely to succeed on the merits of the claim; (2) absent the injunction there is a significant risk of irreparable harm to the movant; (3) the balance of hardships weighs in the movant's favor; and (4) the injunction will not harm the public interest. The Plaintiff is unable to meet even this lower standard.

An examination of the likelihood of success receives the most weight of the four prongs, and courts "have often found this furcula to be critical." <u>Narragansett Indian Tribe v. Guilbert</u>, 934 F.2d 4, 6 (1st Cir. 1991). In evaluating the likelihood of success on the merits of the case at bar, the Court is limited to reviewing the substantive arbitrability of the underlying arbitration matter and may not undertake a review the merits of the grievance. <u>AT&T Technologies, Inc. v. Communications Workers of America</u>, 475 U.S. 643, 649-50 (1986). The Court is not empowered to determine whether the grievance has merit; rather, it must merely determine whether the grievance is one that the parties have agreed to submit to arbitration pursuant to the terms of their contract. <u>Id.</u> In making this determination, the Court must apply a strong presumption in

District Courts the authority to issue injunctions at the request of a Regional Director "notwithstanding any other provision of law." 29 U.S.C. § 160(*l*).

favor of arbitrability. Id. at 650-51; see also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964).

In the instant matter, though the CBA limits the arbitrator's authority to deciding issues involving contract violations, the Union has asked the arbitrator to do just that. Local 791 has merely asked the arbitrator to construe two contract articles requiring Shaw's to recognize the Union as the bargaining representative of employees under set circumstances and to remain neutral in the process. As the arbitrator has merely been asked to construe these provisions, this case falls squarely under the arbitration clause of the contract and is thus substantively arbitrable. Plaintiff's arguments under Snow & Sons, 134 NLRB 709 (1961), enf'd sub nom. Snow v. NLRB, 308 F.2d 687 (9th Cir. 1962), that it had a good faith doubt as to Defendant's majority status are irrelevant to the determination of substantive arbitrability, as they purely involve the merits of the underlying arbitration case.

Though it is enough for present purposes to show that Shaw's has failed to meet the first prong of the four-prong test for injunctive relief, the Company also fails to meet the second prong as it can show no irreparable harm. See Ross-Simons of Warwick, Inc., 102 F.3d at 15. As explained above, supra part III.A.1., an arbitrator's order is not self-executing, so no harm would imminently flow from the arbitration proceeding. Tejidos, 22 F.3d at 14; AT&T Broadband, 317 F.3d at 762. Moreover, the only real harm the Plaintiff has alleged – i.e., litigation costs – are irrelevant to this analysis. AT&T Broadband, 317 F.3d at 762.

For these reasons, Shaw's cannot succeed even under the traditional standards for evaluating a request for injunctive relief, and its motion should therefore be dismissed.

C.    The Courts and the National Labor Relations Board have ruled that
an employer may waive its normal right to an election and that clauses
such as the new stores provision in the CBA are valid and enforceable.

While the Court need not reach Shaw's claim (at pages 7-12 of its memorandum)

that Local 791 is not entitled to seek recognition by arbitration, it is well settled that an

employer may waive its normal right to have a union's demand for recognition resolved

by an election conducted by the Board.

The new store clause in the parties' agreements for the past fifteen years is a

classic Kroger after-acquired stores agreement. The Board's decision in Kroger

Company, 219 NLRB 388 (1975), followed a decision of the Court of Appeals, Retail

Clerks International Association v. NLRB, 510 F.2d 802 (D.C. Cir. 1975). The court

analyzed the future stores provision:

> [T]he "additional stores clause" can have no purpose other than to waive the
> employer's right to a Board ordered election. If the clause is "interpreted to permit
> the employer to petition for an election, then the clause means nothing to the
> union. . . . [I]f the clause is interpreted to permit the employer to petition for an
> election, the clause is a nullity since it permits the employer to do what he could
> do without a contract. We conclude that the "additional store clause" involved
> here can only be interpreted to mean the employer waives its right  to a Board
> ordered election.

510 F.2d at 805-806 (footnote omitted). Under that long-standing, doctrine the Shaw's

new stores clause is an unambiguous waiver of the Company's right to an election

because it specifically provides for recognition upon a showing of majority support for

the Union. This provision has been a central part of the bargain reached between the

parties.

An employer normally has a right to test a union's request for recognition with an

representation (RM) petition before the Board, but it has long been the law that the

employer may waive that right, and that when it does so, it is bound by its agreement.

11

See, e.g., Snow & Sons, 143 NLRB 709 (1961); S.B. Rest of Framingham, Inc., 221

NLRB 506 (1975); Raley's, 336 NLRB 374 (2001); Central Parking Systems, 335 NLRB

390 (2001); Goodless Electric, 332 NLRB 1035, 1038 (2000), rev'd on other grounds,

285 F.3d 102 (1st Cir. 2002); Baseball Club of Seattle (Seattle Mariners), 335 NLRB 563

(2001); Verizon Information Systems, 335 NLRB 558 (2001) ("'National labor policy

favors the honoring of voluntary agreements reached between employers and labor

organizations' . . . including agreements that explicitly address matters involving union

representation.") In Verizon, supra, a union had invoked a contractual procedure for

recognition of new bargaining units and was barred from seeking a Board election when

it later became disenchanted with the progress of the arbitration. In that case the Board

referred to the applicable precedents:

> For example, when an employer has agreed to recognize a union on the basis of a
> showing of majority support demonstrated by authorization cards, the employer
> will be held to that agreement. See, e.g., Goodless Electric Co., 332 NLRB 1035,
> 1038 (2000), citing Snow & Sons, 134 NLRB 709 (1961), enfd. 308 F.2d 6877
> (9th Cir. 1962). Similarly, the Board has required employers to honor agreements
> to recognize a union as the representative of employees in stores acquired after
> the execution of a collective-bargaining agreement and to apply the contract to
> those employees, upon proof of majority support for the union. See, e.g., Kroger
> Co., 219 NLRB 388 (1975). See also Pall Biomedical Products Corp., supra
> (applying Kroger: employer violated statutory duty to bargain by revoking letter
> agreement to extend recognition to union at separate facility, if employee
> performing bargaining unit work was employed there). Accord Hotel &
> Restaurant Employees Union Local 217 v. J.P. Morgan Hotel, 996 F.2d 561 (2d
> Cir. 1993) (enforcing card-check and neutrality agreement, pursuant to Section
> 301 of Labor-Management Relations Act); Hotel Employees, Restaurant
> Employees, Local 2 v. Marriott Corp., 961 F.2d 1464 (9th Cir.1992) (same).

Id. at 561 n.7.

Federal labor policy requires that parties honor their agreements and "settle their

differences by mutual agreement . . . by such methods as may be provided for in any

applicable agreement for the settlement of disputes." 29 U.S.C. § 171. A central tenet of

NLRB policy is that the parties must utilize their grievance and arbitration procedures to resolve unfair labor practices that are covered by the agreement, subject to later review to assure that an award does not conflict with Board policy.

Shaw's effort to use the Board to avoid its clear contractual obligation to arbitrate should be rejected. The arbitrator is fully able to apply the Act to the extent that it applies, and should either party claim that the arbitrator has acted in a manner inconsistent with the Act, appropriate review is available.

## IV.    CONCLUSION

The Court should deny Shaw's motion for a temporary restraining order. Shaw's should be held to its agreement to arbitrate. The various defenses Shaw's asserts may be addressed and resolved by the arbitrator, subject to appropriate review under applicable law. The Court should award Local 791 attorneys fees because the complaint was filed without substantial justification. All courts of appeal that have ruled on the question have held that there is no federal court jurisdiction to enjoin an arbitration. Shaw's does not refer to such cases or suggest that they are incorrectly decided.

Respectfully submitted,

LOCAL 791, UNITED FOOD AND
COMMERCIAL WORKERS
UNION,

By its attorneys,

Warren H. Pyle, BBO #408400
Alfred Gordon, BBO #630456
Pyle, Rome, Lichten & Ehrenberg, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

Date:   June 7, 2004

13

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon David A. Strock, Esq., Moon, Moss, McGill & Shapiro, P.A., Ten Free Street, P.O. Box 7250, Portland , ME 04112-7250, by facsimile on June 7, 2004, and by hand on June 8, 2004.

_____
Warren H. Pyle