UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN 23 P 4 11

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| SHAW'S SUPERMARKETS, INC., )<br>Plaintiff, )<br>v. )<br> )<br>UNITED FOOD AND COMMERCIAL )<br>WORKERS UNION, LOCAL 791, )<br>AFL-CIO, )<br>Defendant. ) | 04-CV-11219 DPW |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE,
FOR JUDGMENT ON THE PLEADINGS**

## I.    INTRODUCTION

Defendant Local 791, United Food and Commercial Workers Union ("Local 791" or "the Union") respectfully submits this memorandum in support of its motion to dismiss the complaint in this proceeding as failing to state a claim upon which relief can be granted, or in the alternative, for judgment on the pleadings.

The complaint by Plaintiff Shaw's Supermarkets, Inc. ("Shaw's" or "the Company") seeks declaratory and injunctive relief relating to grievance matters pending before an arbitrator designated by the American Arbitration Association pursuant to the terms of the parties' collective bargaining agreement (CBA). The grievances claim that Shaw's has violated a provision in the current CBA in which Shaw's has agreed to recognize Local 791 and to apply the CBA to a new store within the geographic area covered by the agreement "when a majority of employees have authorized the Union to represent them." The arbitration hearings, before Professor Frank E.A. Sander, began on May 12, 2004, and were scheduled to continue on June 2, June 11, and August 31.

1

However, on May 28, Shaw's requested that the arbitrator cancel the June 2 hearing so that it could seek injunctive relief and, over strenuous objection by Local 791, the arbitrator agreed to do so. On June 8, 2004, this Court denied Shaw's motion for temporary injunctive relief, allowing the arbitration to proceed.

Now comes the Defendant, Local 791, and requests that this Court dismiss Shaw's unverified complaint for declaratory and injunctive relief. As will be demonstrated below, and as recognized by this Court in the hearing on June 8, Shaw's fails to state a claim upon which relief can be granted with regard to its request for injunctive relief. In addition, although the Court may have jurisdiction to grant declaratory judgment regarding the substantive arbitrability of the underlying arbitration matter, as explained herein, the pleadings plainly demonstrate that the matter is substantively arbitrable, so either the complaint must be dismissed or Local 791 should be granted judgment in its favor on the pleadings.

## II.    RELEVANT FACTS[1]

Shaw's and Local 791 are parties to a collective bargaining agreement covering the period July 28, 2001, through July 31, 2004. The agreement is in effect in thirty-nine Shaw's stores in Southeastern Massachusetts and Rhode Island where almost six thousand employees work. Since 1988 the agreements have included a "future stores" provision that states:

> When the Employer opens new stores within the geographic area described in
> Article 1, the Employer will allow access within the store prior to opening during

---

[1] The facts set forth in this statement are verified by the affidavit of Russell Regan, President of Local 791, attached as Exhibit A to Local 791's Memorandum in Opposition to Shaw's Supermarkets, Inc.'s Motion for a Temporary Restraining Order, which is attached hereto as Exhibit 1. For ease of reference, this and other lettered exhibits attached to Exhibit 1 will be referred to as Exhibit 1(A), etc.

the hiring process, will remain neutral, and will recognize the Union and apply the contract when a majority of Employees have authorized the Union to represent them.

The geographic area described in Article 1 of the CBA includes the State of Rhode Island and Norfolk, Bristol, Plymouth, and Barnstable counties in Massachusetts.

Under the new stores provision, approximately sixteen new Shaw's stores have come under the terms of the CBAs since 1989. In each case the Union obtained a majority of authorization cards from a majority of employees before the store opened and so advised Shaw's, whereupon Shaw's recognized the Union for the new store and applied the provisions of the CBA to the employees in that store. There was one exception when Shaw's refused to recognize Local 791 until the date of the store opening, but an arbitrator ruled that Shaw's violated the new stores provision by refusing to recognize the Union when it attained majority status before the store opening.

In August 2003, Shaw's opened a new store in Mansfield, Massachusetts, within the geographic area covered by the agreement and the new stores provision. Local 791 obtained a majority of authorizations from employees transferred from other union stores and new employees hired to work at Mansfield. On August 13, 2003, Local 791 advised Shaw's that it had obtained authorizations for representation from a majority of employees hired for the new store and demanded recognition. Shaw's responded on August 14:

> As per our existing practice, please submit proof of your assertion that the Union has majority status as of this date. As we have done in the past, upon review and verification of proof of majority status, Shaw's will recognize Local 791 and apply the collective bargaining agreement to the Mansfield store.

(Exhibit 1(B).) On August 19, three days before the store opening, the Union delivered authorizations for representation from a majority of employees hired and transferred to

3

work in the Mansfield store. But on August 21, Shaw's refused recognition and announced that the store would be non-union. It told the employees transferred from union stores that they would have to leave the Union or return to their former stores.

Shaw's claimed that the Union had obtained authorization cards from employees by coercion or misrepresentation and filed a charge with the National Labor Relations Board ("NLRB" or "the Board"). The Regional Director investigated the charge and refused to issue a complaint for lack of evidence, and the Board's General Counsel affirmed that decision. (Exhibit 1(C).)

Local 791 promptly filed grievances and submitted them to arbitration under the CBA's broad grievance and arbitration provision that authorized the arbitrator to hear and decide claims of violations of the CBA. Pursuant to the CBA, an arbitrator was appointed by the American Arbitration Association. The arbitrator, Professor Frank E.A. Sander of Harvard Law School, after receiving submissions of the parties, ordered that hearings be expedited. (Exhibit 1(D).) Hearings began on May 12, 2004. At that hearing the Union made an opening statement and offered supporting documents.[2]

On April 21, eight months after Shaw's refused to recognize Local 791 for the Mansfield store, and twelve days before hearings before the arbitrator were to begin (a May 3 hearing was canceled because of a Shaw's management meeting) Shaw's filed a petition with the National Labor Relations Board, seeking an election to resolve the Union's claim that it was entitled to recognition. On April 30, the Regional Director dismissed the petition administratively under the authority of Central Parking Systems, Inc, 335 NLRB 390 (2001), wherein the NLRB dismissed an employer's petition for an

---

[2] Shaw's complaint, paragraph 17, is incorrect in stating that "the arbitration is scheduled to commence on June 11, 2004." A transcript of the May 12, 2004, hearing contains 92 pages.

election in a case where the CBA contained a provision for recognition in an after-acquired facility. (Exhibit 1(E).) Shaw's has requested review by the NLRB.

The arbitrator, after receiving submissions of the parties, refused to defer hearings pending a decision by the NLRB. (Exhibit 1(F).)

## III.    ARGUMENT

      A.    <u>Count I of Shaw's complaint must be dismissed as it fails to state a claim upon which relief can be granted, or in the alternative, Local 791 is entitled to judgment on the pleadings as to Count I, because Local 791 is merely seeking to arbitrate a grievance that involves a matter of contract interpretation and did not, therefore, violate the CBA.</u>

The Company erroneously alleges in Count I that Local 791 has violated the parties' CBA, and thus violated section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, by forcing Shaw's to arbitrate something that the Company has not agreed to arbitrate. The Company's allegation is absurd, as the underlying grievances merely allege violations of the contract provision quoted in the complaint.

Though section 301 provides only that "suits for violation of contracts between an employer and a labor organization . . . may be brought in any district court," the Supreme Court has imbued this jurisdictional provision with substantive authority for suits alleging contract violations. <u>See</u> <u>Martin v. Shaw's Supermarkets, Inc.</u>, 105 F.3d 40, 41-42 (1st Cir. 1997), <u>quoting</u> <u>Textile Workers v. Lincoln Mills</u>, 353 U.S. 448 (1957). However, in section 301 suits regarding the propriety of arbitration proceedings under a CBA, "[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator." <u>Steelworkers v. American Mfg. Co.</u>, 363 U.S. 564 (1960).

So strong is the presumption of arbitrability, and so limited is the role of the court, that courts are required to order parties to arbitrate grievances "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). Moreover, the presumption favoring arbitrability is so strong that an arbitrator may determine questions of fact and of contract interpretation even when those decisions implicate representational determinations, which are matters normally reserved for the NLRB. Int'l Assn. of Machinists & Aerospace Workers, AFL-CIO v. Int'l Air Service of Puerto Rico, Inc., 636 F.2d 848 (1st Cir. 1980) (IAMAW) (holding that the district court must compel arbitration even though that would require the arbitrator to determine whether certain employees were included in the bargaining unit). In so holding, the First Circuit stated that "[w]hile it is possible to construe the relief sought [from the arbitrator] as calling for a determination of the scope of the bargaining unit represented, a task committed exclusively to the Board, labor policy supplies a preference for interpreting questions as arbitrable in such a situation." Id. at 849. See also Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Telex Computer Products, Inc., 816 F.2d 519, 526 (10th Cir. 1987) ("If an agreement allows arbitration of contractual disputes that may affect representational issues, the concurrent jurisdiction of the NLRB will not deprive the parties of their bargain.")

Though the CBA at issue limits the arbitrator to "deciding if a violation of the Agreement has occurred," (Compl. ¶ 18), that is exactly what the arbitrator is being asked to do here. The CBA contains specific language requiring the Company to give the Union

access to the store during the hiring process and remain neutral and to recognize the Union and apply the contract when a majority of employees have authorized the Union to represent them. (Compl. ¶ 10.) As characterized by the Company, the Union's grievances allege that Shaw's failed to allow the Union access and to remain neutral and that Shaw's failed to recognize the Union and apply the contract. (Compl. ¶ 16.) These matters fall squarely within the cited contract provision, and thus under the arbitration clause, the arbitrator is in a proper position to render determinations on these issues of fact and contract interpretation to give the parties the benefit of their bargain.[3] See IAMAW, 636 F.2d at 849.

Therefore, Local 791 cannot be said to have violated the CBA or section 301 of the LMRA because it has not asked Shaw's to arbitrate anything more than Shaw's has agreed to arbitrate. This count should therefore be dismissed because Shaw's failed to raise a claim upon which relief can be granted, or alternatively, Local 791 is entitled to judgment in its favor on the pleadings without the need for further proceedings.

   B.    Count II of Shaw's complaint must be dismissed, or Local 791 is entitled to judgment on the pleadings as to Count II, because the underlying grievance matter is plainly arbitrable within the meaning of the parties' CBA and the Court must apply a strong presumption in favor of arbitrability.

Count II of Shaw's complaint seeks a declaratory judgment that the underlying grievances are not arbitrable, which is at odds with the clear language of the contract and the strong presumption in favor of arbitrability. Though courts have the authority to issue declaratory relief in matters of substantive arbitrability, Cf. Shaw's Supermarkets, Inc. v.

---

[3] In this regard, the Regional Director of the NLRB has already sought to give the parties the benefit of their bargain by administratively dismissing the Company's election petition so as not to deprive the Union of the benefit of the bargained-for new stores provision. (Compl. ¶ 22.)

v. United Food & Commercial Workers Union, Local 791, AFL-CIO, 321 F.3d 241 (1st

Cir. 2003), such relief is plainly not warranted in this case.

> 1.    Considering the strong presumption in favor of arbitrability and the clear language of the contract, the underlying grievance is plainly arbitrable.

In cases seeking declarations regarding the arbitrability of a labor dispute, the

court is limited to reviewing the substantive arbitrability of the underlying arbitration

matter and may not undertake a review the merits of the grievance. AT&T Technologies,

Inc. v. Communications Workers of America, 475 U.S. 643, 649-50 (1986). The court is

not empowered to determine whether the grievance has merit; rather, it must merely

determine whether the grievance is one that the parties have agreed to submit to

arbitration pursuant to the terms of their contract. Id. In making this determination, the

Court must apply a strong presumption in favor of arbitrability. Id. at 650-51; see also

John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964).

As explained above, supra part III.A, though the CBA at issue limits the

arbitrator's authority to deciding issues involving contract violations, the Union has asked

the arbitrator to do nothing more than that. Local 791 has merely asked the arbitrator to

construe two contract articles requiring Shaw's to recognize the Union as the bargaining

representative of employees under set circumstances and to remain neutral in the process.

Since the arbitrator has merely been asked to construe the new store provision cited in the

complaint, this case falls squarely under the arbitration clause of the contract and is thus

substantively arbitrable. Plaintiff's argument under Snow & Sons, 134 NLRB 709 (1961),

enf'd sub nom. Snow v. NLRB, 308 F.2d 687 (9th Cir. 1962), that it had a good faith

doubt as to Defendant's majority status is irrelevant to the determination of substantive arbitrability, as it purely involves the merits of the underlying arbitration case.

For these reasons, the matter is substantively arbitrable and the Company is not entitled to the declaratory relief it is seeking. Therefore, either this count must be dismissed as failing to state a claim upon which relief can be granted or Local 791 is entitled to judgment in its favor on the pleadings.

> 2.   The Courts and the National Labor Relations Board have ruled that an employer may waive its normal right to an election and that clauses such as the new stores provision in the CBA are valid and enforceable.

While the Court need not reach Shaw's claim (at pages 7-12 of its Memorandum in Support of its Request for TRO) that Local 791 is not entitled to seek recognition by arbitration, it is well settled that an employer may waive its normal right to have a union's demand for recognition resolved by an election conducted by the Board.

The new store clause in the parties' agreements for the past fifteen years is a classic <u>Kroger</u> after-acquired stores agreement. The Board's decision in <u>Kroger</u> Company, 219 NLRB 388 (1975), followed a decision of the Court of Appeals, <u>Retail Clerks International Association v. NLRB</u>, 510 F.2d 802 (D.C. Cir. 1975). The court analyzed the future stores provision:

> [T]he "additional stores clause" can have no purpose other than to waive the employer's right to a Board ordered election. If the clause is "interpreted to permit the employer to petition for an election, then the clause means nothing to the union. . . . [I]f the clause is interpreted to permit the employer to petition for an election, the clause is a nullity since it permits the employer to do what he could do without a contract. We conclude that the "additional store clause" involved here can only be interpreted to mean the employer waives its right to a Board ordered election.

510 F.2d at 805-806 (footnote omitted). Under that long-standing doctrine, the Shaw's

new stores clause is an unambiguous waiver of the Company's right to an election

because it specifically provides for recognition upon a showing of majority support for

the Union. This provision has been a central part of the bargain reached between the

parties.

An employer normally has a right to test a union's request for recognition with a

representation (RM) petition before the Board, but it has long been the law that the

employer may waive that right, and that when it does so, it is bound by its agreement.

See, e.g., Snow & Sons, 143 NLRB 709 (1961); S.B. Rest of Framingham, Inc., 221

NLRB 506 (1975); Raley's, 336 NLRB 374 (2001); Central Parking Systems, 335 NLRB

390 (2001); Goodless Electric, 332 NLRB 1035, 1038 (2000), rev'd on other grounds,

285 F.3d 102 (1st Cir. 2002); Baseball Club of Seattle (Seattle Mariners), 335 NLRB 563

(2001); Verizon Information Systems, 335 NLRB 558 (2001) ("'National labor policy

favors the honoring of voluntary agreements reached between employers and labor

organizations' . . . including agreements that explicitly address matters involving union

representation.") In Verizon, supra, a union had invoked a contractual procedure for

recognition of new bargaining units and was barred from seeking a Board election when

it later became disenchanted with the progress of the arbitration. In that case the Board

referred to the applicable precedents:

> For example, when an employer has agreed to recognize a union on the basis of a
> showing of majority support demonstrated by authorization cards, the employer
> will be held to that agreement. See, e.g., Goodless Electric Co., 332 NLRB 1035,
> 1038 (2000), citing Snow & Sons, 134 NLRB 709 (1961), enfd. 308 F.2d 6877
> (9th Cir. 1962). Similarly, the Board has required employers to honor agreements
> to recognize a union as the representative of employees in stores acquired after
> the execution of a collective-bargaining agreement and to apply the contract to
> those employees, upon proof of majority support for the union. See, e.g., Kroger

10

Co., 219 NLRB 388 (1975). See also Pall Biomedical Products Corp., supra (applying Kroger: employer violated statutory duty to bargain by revoking letter agreement to extend recognition to union at separate facility, if employee performing bargaining unit work was employed there). Accord Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan Hotel, 996 F.2d 561 (2d Cir. 1993) (enforcing card-check and neutrality agreement, pursuant to Section 301 of Labor-Management Relations Act); Hotel Employees, Restaurant Employees, Local 2 v. Marriott Corp., 961 F.2d 1464 (9th Cir.1992) (same).

Id. at 561 n.7.

Federal labor policy requires that parties honor their agreements and "settle their differences by mutual agreement . . . by such methods as may be provided for in any applicable agreement for the settlement of disputes." 29 U.S.C. § 171. A central tenet of NLRB policy is that the parties must utilize their grievance and arbitration procedures to resolve unfair labor practices that are covered by the agreement, subject to later review to assure that an award does not conflict with Board policy.

Shaw's effort to use the Board to avoid its clear contractual obligation to arbitrate should be rejected. The arbitrator is fully able to apply the Act to the extent that it applies, and should either party claim that the arbitrator has acted in a manner inconsistent with the Act, appropriate review is available.

C.    Count III of Shaw's complaint must be dismissed as it fails to state a claim upon which relief can be granted because the Norris-LaGuardia Act prevents the Court from issuing injunctive relief, or in the alternative, Local 791 is entitled to judgment in its favor as to Count III on the pleadings as Shaw's cannot demonstrate that it would be entitled to injunctive relief even absent the prohibition of the Norris-LaGuardia Act.

1.    Count III fails to state a claim upon which relief can be granted as the Norris-LaGuardia Act prevents the Court from issuing the injunctive relief that Shaw's has requested.

The Norris-LaGuardia Act ("the NLA") states that no court may issue any temporary or permanent injunction in a case "involving or growing out of a labor

dispute" except under certain very limited circumstances. 29 U.S.C. §§ 101, 107. Section 7 of the NLA sets forth the circumstances required for an injunction, which include, inter alia, the commission of or imminent threat of unlawful acts and the threat of "substantial and irreparable injury to complainant's property." 29 U.S.C. § 107.

Every federal appeals court to have addressed the issue, including the First Circuit, has held that these provisions of the NLA specifically forbid a district court from enjoining the arbitration of a labor dispute, or at least that injunctions are impermissible except in the unlikely event that the statutory factors of section 7 are met. Tejidos de Coamo, Inc. v. International Ladies' Garment Workers' Union, 22 F.3d 8 (1st Cir. 1994) (Tejidos); Lukens Steel Co. v. United Steelworkers, 989 F.2d 668 (3d Cir. 1993); AT&T Broadband, LLC v. International Brotherhood of Electrical Workers, 317 F.3d 758 (7th Cir. 2003) (AT&T Broadband); Camping Construction Co. v. Iron Workers, 915 F.2d 1333 (9th Cir. 1990); In re Marine Engineers Beneficial Assn., 723 F.2d 70 (D.C. Cir. 1983). Shaw's is unable to meet the stringent requirements of the NLA as it cannot demonstrate the commission or threat of an unlawful act that requires injunctive relief, nor can it establish a threat of substantial and irreparable harm to its property or "property-like interest." See Tejidos, 22 F.3d at 13.

With regard to the issue of irreparable harm, the courts to have addressed the issue in this context regularly find that there would be no irreparable harm that would allow a district court to enjoin an arbitration. See, e.g., id. at 14-15; AT&T Broadband, 317 F.3d at 762. The Company's stated concerns over what an arbitrator might order are irrelevant, because an arbitrator's order is not self-executing and is subject to review. Tejidos, 22 F.3d at 14; AT&T Broadband, 317 F.3d at 762. Moreover, the Company's

argument that the NLRB's holding in <u>Verizon Information Systems</u>, 335 NLRB 558

(2001) (<u>Verizon</u>), might prevent Shaw's from proceeding with its petition before the

Board is specious. In that case, the NLRB prevented a party from electing to proceed in

two separate forums on the same issue. <u>Id.</u> Though Shaw's may seek to ensure that any

arbitration proceeding is conducted correctly, it is the Union, and not Shaw's, who chose

the arbitration forum, so under this holding, it is only Local 791 that could possibly be

barred from proceeding on the same matter elsewhere.

    The only form of loss the Company alleges that can truly be attributed to

participating in the arbitration proceeding is the time and expense of the litigation.

(Plaintiff's Memorandum in Support of Motion for TRO at 11.)  However, it has long

been established that "the expense of adjudication is not irreparable injury" for the

purposes of evaluating injunctive relief. <u>AT&T Broadband</u>, 317 F.3d at 762 (citing <u>FTC</u>

<u>v. Standard Oil</u>, 449 U.S. 232, 244 (1980) among other Supreme Court cases).

    Moreover, as noted in the pleadings and in the hearing on the Company's request

for temporary injunctive relief, the Company's reliance on <u>Hawaii Nurses' Assn.</u>

<u>Collective Bargaining Org. v. Kapiolani Health Care System</u>, 890 F. Supp. 925 (1995)

(<u>Hawaii Nurses' Assn.</u>), is misplaced, because the District Court in that case did not

enjoin an arbitration proceeding as Shaw's contends, but rather stayed its own

proceedings. (<u>See</u> Exhibit 1 at 7-9.)  The crucial point missed by Shaw's in its reliance on

<u>Hawaii Nurses' Assn.</u> is that the District Court stayed <u>its own</u> proceedings, not the

arbitration proceeding. <u>See id.</u> at 928, 931 (noting that the Respondent asked the Court to

"stay the proceedings <u>in this case</u>" and later granting "the Respondent's motion to stay all

proceedings <u>in this case</u>") (emphasis added). For this reason, the decision in <u>Hawaii</u>

Nurses' Assn. offers no support for the Company's position that this Court has the authority to stay the arbitration proceedings.

Therefore, pursuant to the terms of the Norris-LaGuardia Act, the Court is without the authority to issue a permanent injunction preventing the arbitration from proceeding, and this count of the complaint must be dismissed as failing to state a claim upon which relief can be granted. In the alternative, Local 791 is entitled to judgment in its favor on the pleadings.

> 2.    The Plaintiff would not be entitled to an injunction even under the traditional standards for evaluating injunctive relief.

In the present matter, the permanent injunction that the Company is seeking requires the Company to succeed on the merits of the case — i.e., the Court must find that the underlying grievance matters are not substantively arbitrable. As discussed in detail above, supra parts III.A and III.B, considering the plain meaning of contract language and the strong presumption in favor of arbitrability, the Court must find that this matter is substantively arbitrable and deny the Company's request for an injunction.

For these reasons, Shaw's is not entitled to an injunction even absent the strict requirements of the Norris-LaGuardia Act, and this count must be dismissed for failure to state a claim upon which relief can be granted, or in the alternative, Local 791 is entitled to judgment in its favor on the pleadings.

## IV.    CONCLUSION

The Court should grant the motion of Local 791 to dismiss the Company's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be based,

or in the alternative, the Court should grant Local 791 judgment in its favor on the pleadings pursuant to Rule 12(c) as no further proceedings are necessary to determine that Shaw's cannot succeed on any claim properly before this Court.

Respectfully submitted,

LOCAL 791, UNITED FOOD AND
COMMERCIAL WORKERS
UNION,

By its attorneys,

Warren H. Pyle, BBO #408400
Pyle, Rome, Lichten & Ehrenberg, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

Date:  June 23, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon David A. Strock, Esq., Moon, Moss, McGill & Shapiro, P.A., Ten Free Street, P.O. Box 7250, Portland , ME 04112-7250, by facsimile and first class mail, on June 23, 2004.

Warren H. Pyle